UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR421-137 |
| | ) | |
| SHAWN GREEN, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDATION**

Defendant Shawn Green is indicted on a single count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). *See* doc. 1 (Indictment). Green was arrested after a traffic stop on May 6, 2020. *See, e.g.,* doc. 25 at 2-3. He argues that the firearm seized from the back of his car should be suppressed, since the arresting officer had no reasonable suspicion to believe he had committed a traffic violation, and therefore had no legitimate grounds to stop him. *See id.* at 1. He also argues that the gun should be suppressed even if the stop was valid at its inception because it was unnecessarily prolonged. *Id.* The Government opposes. Doc. 27. On November 22, 2021, the Court held a hearing on Green's motion. Doc. 31. The motion is ripe for disposition and should be **DENIED**. Doc. 25.

## I.   BACKGROUND[1]

Savannah Police Officer Ryan Price was patrolling on May 6, 2020, when he observed a vehicle, driven by Green, with a license tag that read "Test Drive," *see* doc. 31-2. Price testified that he is familiar with standard personal license plates, dealer plates, and temporary operating permits in the state of Georgia, and that Green's plate did not appear to be any one of these permissible tags. He also noticed that one of the license plate lights was out. Therefore, he initiated a traffic stop.

Price initiated the stop by turning on his lights and siren, but Green continued to drive the vehicle about a block and a half. During that time, Price saw him moving his hands towards the rear, passenger side of the vehicle. This appeared to Price, based on his training and experience, as an indication that Green was trying to either conceal or retrieve something, possibly drugs or weapons. Based on these movements, once Green stopped the car, Price approached it on the passenger side for his own safety. Green partially rolled down the passenger-side window and initiated a conversation with Price about the invalid "Test Drive" tag,

---

[1] This background comes predominately from Savannah Police Officer Ryan Price's testimony during the hearing on November 22, 2021. *See* doc. 31.

which Green blamed on the COVID-19 pandemic. Green also identified the presence of a passenger in the backseat. Once the window was down Price noticed the smell of marijuana. He could not remember if the smell of the marijuana was burnt or fresh, but unequivocally and credibly testified that he smelled marijuana, a scent he has been trained to identify.

Price did not immediately detain Green. Instead, after Green voluntarily provided his identification, Price returned to his patrol car where he called for a backup officer. Once backup arrived, Price asked Green and his passenger to exit the vehicle and detained them both. Based on the odor of marijuana, Price searched Green's vehicle. During that search, he found, among other things, a firearm. *See, e.g.,* doc. 31-3 at 1.

Green, in his initial submission, argued that the traffic stop was not lawful because the only bases for the stop were mistakes of law, and therefore the officer had no probable cause or reasonable suspicion to stop the vehicle. According to Green, the officer's belief that he could initiate the traffic stop because of the paper tag was a mistake, as was the officer's belief that he could initiate the stop because one of the car's rear

license plate lights was out. Doc. 25 at 6-7. He also argued that, even if the stop was lawful, it was unnecessarily prolonged and thus became unlawful. *Id.* at 7-8. During the hearing, the parties agreed that the arguments distill down to a single factual issue—whether the paper license tag that simply read "Test Drive" was an invalid tag that justified the traffic stop.

## II.   ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police stop a motor vehicle, a Fourth Amendment "seizure" occurs. *Whren v. United States*, 517 U.S. 806, 809–810 (1996). A traffic stop is constitutional when the police have probable cause to believe that a traffic violation has occurred, *id.* at 810, even when police only have probable cause to believe that a minor or common traffic violation has occurred. *Arizona v. Johnson*, 555 U.S. 323, 331 (2009); *see also Whren*, 517 U.S. 806, 818 ("[W]e are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement.").

Officer Price credibly testified that he initiated the stop of Green's vehicle after he observed the vehicle's license tag and determined it to be invalid. It is a misdemeanor to operate a vehicle on a Georgia public highway or street without a valid license plate. O.C.G.A. § 40-2-8(a). Georgia law contemplates a "temporary plate" which can be issued to the purchaser of a new or used vehicle, but it must conform to a "standard design prescribed by regulation promulgated by the department [of revenue]." O.C.G.A. § 40-2-8(b)(2)(B). The Georgia Department of Revenue has promulgated standard requirements for temporary tags. *See* Ga. Comp. R. & Regs. 560-10-32-.05. According to Price's testimony, when he saw Green's tag that simply read "Test Drive," he knew that it did not contain the markings required for any valid tags contemplated by Georgia law.

Green, citing *Gibbons v. McBride*, 124 F. Supp. 3d 1342 (S.D. Ga. 2015), and *Berry v. State*, 547 S.E.2d 664 (Ga. Ct. App. 2001), argues that a "paper tag" does not support a valid stop. But these cases are distinguishable. In *Gibbons*, which arose in the context of whether qualified immunity applied in a 42 U.S.C. § 1983 case, this Court found that clearly established law required a police chief to train his officers on

the principle that "a random stop of a motorist—in the absence of observations of traffic or equipment violations or suspicious activity—violates the Fourth Amendment." 124 F. Supp. 3d at 1372. Here, Officer Price testified that he observed not just a paper tag, but a paper tag that was missing all the hallmarks of a valid temporary tag under Georgia law. *See* doc. 31-2 (photo of license plate). The traffic stop was not random but was based on Price's observation of an invalid license tag. *Gibbons* is inapplicable.

Similarly, the *Berry* case cited by Green is inapposite. In that case, the officer stopped the defendant for operating a car with a "drive-out tag," another moniker for a Georgia temporary tag, because "the officer had a mere inclination or hunch that any car with a drive-out tag might be stolen." *Berry*, 547 S.E.2d at 668-69. In this case, Price had more than a "hunch" that something was wrong; instead, he observed the tag and concluded that it did not meet the requirements for a valid Georgia tag. *Berry* does not suggest a different result.

Price observed Green commit at least one traffic violation before he initiated the stop: Green was driving a vehicle without a valid tag in violation of Georgia law. Because this traffic violation was sufficient to

6

create probable cause for Price to conduct a traffic stop, the Court should find that he did have probable cause to stop Green's vehicle. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106,109 (1977) ("[T]here is no question about the propriety of the initial" stop where defendant violated Pennsylvania traffic law by "driving an automobile with expired license tags."). It does not matter that Officer Price ultimately issued Green a verbal warning for the invalid tag. *See United States v. Woods*, 385 F. App'x 914, 917 (11th Cir. 2010) ("[T]here is no constitutional requirement that a police officer issue a traffic citation; the police officer can pull a car over if he simply observes that car committing a traffic infraction.").

Price's initial stop of Green was based on probable cause and was therefore valid. Green argues that, even so, the stop was unlawfully prolonged when he and his passenger were removed from the car, he was frisked, and the back of the car was searched. Doc. 25 at 8. The Government counters that Price smelled marijuana upon Green rolling down the front passenger side window. At that point, it contends, he had probable cause to search the vehicle. Doc. 27 at 7-8.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Id.* (cites omitted). "An officer is not prohibited altogether from conducting inquiries unrelated to the purposes of the stop—that is, inquiries directed at detecting criminal activity more generally." *United States v. Byron*, 817 F. App'x 753, 756 (11th Cir. 2020) (citing *Rodriguez*, 575 U.S. at 355 ("An officer ... may conduct certain unrelated checks during an otherwise lawful traffic stop.")). "But the officer may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* (quotes and cite omitted).

Officer Price did not improperly prolong the traffic stop. He testified that he smelled marijuana emanating from the car as soon as Green initially rolled down the passenger window. At that point, he had not just reasonable suspicion, but probable cause to search the vehicle. The Eleventh Circuit has held that the smell of marijuana coming from a person's vehicle establishes probable cause for a search. *United States v. Williams*, 731 F. App'x 863, 867 (11th Cir. 2018) (collecting cases). It does not matter if the smell of marijuana is that of burnt or fresh, the

8

smell of either supports probable cause. *Compare United States v. Smith*, 596 F. App'x 804, 807 (11th Cir. 2015) (upholding search of car where officer testified that he smelled fresh marijuana coming from inside the car prior to search) *with Merricks v. Adkinson*, 785 F.3d 553, 560 n. 3 (11th Cir. 2015) ("[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc)). *See also United States v. Johnson*, 2007 WL 2874303, at * 3 (S.D. Ga. Sept. 26, 2007) ("[I]t is clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." (quotes and cite omitted)).

## III. CONCLUSION

The initial stop of Green's vehicle was valid, based, at least, on Officer Price's observation of the improper and invalid license tag. He did not improperly prolong the traffic stop since he smelled marijuana almost immediately after first approaching the vehicle. Accordingly, Green's suppression motion should be **DENIED**. Doc. 25.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 21st day of December, 2021.

                                                _/s/ Christopher L. Ray_
                                                CHRISTOPHER L. RAY
                                                UNITED STATES MAGISTRATE JUDGE
                                                SOUTHERN DISTRICT OF GEORGIA